(50 Misc. Rep. 177)

DIECHMANN et al. v. BOYD et al.

(Supreme Court, Appellate Term.  March 26, 1906.)

SALES—BREACH OF WARRANTY—WAIVER—EVIDENCE.

　　Where the vendees of logs, after discovering that the same were not of
　the size alleged to have been represented by the vendors, continued without
　objection to receive the logs and to saw them into planks, they waived
　defendants' breach of warranty, if any, as to the size.

　　[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 818.]

Appeal from Municipal Court, Borough of Manhattan, Seventh
District.

Action by Otto Diechmann and another against John Boyd, Jr., and
another.  Judgment for plaintiffs, and defendants appeal.  Reversed.

Argued before SCOTT, P. J., and O'GORMAN and NEWBUR-
GER, JJ.

Heyn & Covington (Edward J. Pierce, of counsel), for appellants
Norwood & Marsden (Carlisle Norwood, of counsel), for respond-
ents.

SCOTT, P. J.  The pleadings are oral.  The plaintiffs sued original-
ly, as shown by their bill of particulars, for a breach of contract arising
out of defendants' refusal to deliver 31 logs of mahogany, part of a
much larger purchase, and for the storage expenses.  On the trial,
after defendants had rested and plaintiffs had offered testimony in
rebuttal, the plaintiffs were allowed to amend their demand by adding
a claim for damages for breach of warranty as to 157 logs, part of the
same purchase, which had been accepted and cut up into planks by
plaintiffs.  The judgment in plaintiffs' favor does not correspond in
amount either with the original claim for breach of contract or the
added claim for breach of warranty, and it is therefore impossible to
determine upon which cause of action the justice went in rendering
judgment.  The defendants counterclaimed for the price of the 31 logs.
In November, 1904, the defendants received upon consignment a
lot of 1,169 mahogany logs, which were stored in the yard of Nesmith
& Constantine, a well-known firm, whose inspections and certificates of
measurement are generally accepted in the trade.  Of these logs it is
conceded that 917 measured 12 inches and over in diameter, 157 ap-
pear to have been from 10 or 11 inches, and the remainder were of
less diameter.  Under instructions from defendants' agent the 917
logs were piled into what is known as a "crib," and the 157 logs were
piled on top of them.  The remaining smaller logs do not figure in
the case.  The crib was built up in the manner described, in November,
1904, and remained in this condition until February, 1905, during
which time dickerings about a sale went on between one Volkenning,
who was plaintiffs' buyer, and one Andojar, who was defendants'
broker.  Volkenning was constantly around the yard, and saw the lum-
ber before and after it was piled.  Finally about February 7, 1905, a
price was agreed upon and a sale made at 8⅛ cents per foot for the
crib of 1,074 logs, less 2 per cent. discount for cash payment, to be
paid one-half immediately against delivery order, the balance of the

.bill within 30 days. Brokers' bought and sold notes embodying these terms were exchanged. Upon the completion of the sale the inspection returns were handed to Volkenning. He says that this is the first that he saw of them, but there is evidence that he had frequently seen them before. However this may be, his testimony is that he found that Nesmith & Constantine had made separate inspection returns, one for 917 logs, and the other for 157 logs. His suspicions seem to have been aroused by this circumstance, and he says that, after going to the yard again and looking at the lumber, he went to defendants' office and returned to one Alten, representing defendants, the inspection return, the delivery order, and the bill for the lumber, saying that the matter looked like crooked business and that plaintiffs would have nothing to do with it. Then was made, as he says, the guaranty which forms the basis of this action. He testifies that Alten said:

"We will guaranty that all the measurements was done by Constantine under the same inspection, and all at one time, and that the 12 inches, the logs being not under 12 inches, would apply to the whole lot."

Alten positively denied that he ever gave any such guaranty. He says that Volgenning said that he did not like the three upper tiers of logs on the crib, whereupon Alten told him that he could take the lot or leave it. Thereupon plaintiffs accepted the sale, paid one-half the price, and took all the logs away, except the 31 logs which were on the bottom layer, and which concededly were of the diameter of 12 inches or upwards. The disputed 157 logs, being piled on top of the crib, were taken first, and were cut into planks by plaintiffs. After some of them had been cut Volkenning objected to the size, but plaintiffs retained them and cut them up, and never offered to return them. The second payment became due on March 7th, but plaintiffs refused to pay until defendants notified the owners of the yard not to deliver any further logs until payment had been made. On March 28th plaintiffs wrote asserting the claim that the logs had been sold as all of the diameter of 12 inches, and insisted on deducting from the amount due the difference between the sale price and a lower price at which they estimated the value of the 157 logs. Some correspondence ensued, resulting in the payment by plaintiffs of $3,525.15 on account, leaving in dispute the balance of $267 unpaid on the bill and $77.39 for one-half of the discount, which was to have been allowed only upon payment in cash, in accordance with the sales note.

The judgment is sought to be sustained upon two theories. One is that defendants sold the crib with a representation that all the logs were 12 inches in diameter or more. Just how it is claimed that such a representation was made is not quite clear. At one time plaintiffs' agent seems to have claimed that the smaller logs were put on top of the pile after the sale had been made, but this is clearly not sustained. It is expressly testified to by Volkenning, plaintiffs' buyer, that nothing was said about sizes when the sale was made. The purchase was of the crib as it stood. It had been piled up for months. The plaintiffs' buyer had seen the logs constantly, both before and after they were piled up. He had every opportunity to examine the crib, and should

have known what he was buying. We can find no support for the claim that the sale was induced by any deceit or false representation. Nor is the claim of an express guaranty much better sustained. It is true that Volkenning testifies to a conversation which might be construed as a guaranty, but he may easily be mistaken as to the precise language used, and it is significant that no claim of a specific guaranty was made in the correspondence between the parties prior to the suit, nor in the action itself until the issues tendered by the complaint had been thoroughly tried out, and the plaintiffs had apparently failed to establish their original cause of action.

But, even if a specific guaranty was made, it must be deemed to have been waived. Its breach, if breach there was, had reference to the three upper layers of logs, the first taken from the pile and sawed up. Concededly the plaintiffs had notice of an apparent discrepancy in measurement before they accepted any of the logs. The deficiency in size must have been apparent when the first logs were taken to the sawmill, and defendants' attention was called to them when only a part had been sawn up. Notwithstanding all this, the plaintiffs went on receiving and cutting up the logs as they came off the pile, and never claimed that their size was a breach of any express warranty. Whether there was a representation or a warranty, if there was either, the plaintiffs clearly waived it by going on with the contract and accepting the logs with full knowledge of the alleged breach. Upon the evidence as it stands, giving plaintiffs the benefit of every disputed question of fact, there is no basis for the judgment appealed from.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event. All concur.